STATE OF NORTH CAROLINA v. JERRY LOCKLEAR

No. COA04-1365

(Filed 2 August 2005)

## 1. Rape— second-degree—child victim—force—sufficiency of evidence

It has been held that the child's knowledge of her father's power may alone induce fear sufficient to overcome her will. Evidence that defendant began molesting his daughter when she was four years old, that he threatened and frighted her, and that she became pregnant twice was sufficient to support denial of defendant's motion to dismiss charges of second-degree rape.

## 2. Sexual Offenses— incest—sufficiency of evidence—discrepancies in dates

Testimony that defendant was the victim's father, that he started molesting her when she was four years old, and hospital records indicating intercourse were sufficient to deny a motion to dismiss charges of incest. Discrepancies between the dates of the offenses were credibility issues for the jury.

STATE v. LOCKLEAR

[172 N.C. App. 249 (2005)]

### 3. Evidence— statements to detective—corroboration

A rape and incest victim's statements to a detective were admissible for corroborative purposes. Inconsistencies were for the jury to consider and weigh.

### 4. Evidence— statements from mother of incest victim—additional facts—corroboration

Statements from the mother of a rape and incest victim were properly admitted for corroboration. The mother's statements tended to strengthen and add credibility to her trial testimony, although they included additional facts not referred to in her testimony.

### 5. Evidence— prior crimes or bad acts—rape and incest— testimony from victim's sister

The trial court did not err by allowing testimony from a rape and incest victim's older sister about defendant's abuse of her when she was a child. This illustrated a continuing pattern and an intent to commit incest.

### 6. Evidence— prior crimes or bad acts—rape and incest— mother's testimony—independent evidence of guilt

There was no plain error in a rape and incest prosecution in allowing the victim's mother to testify about defendant's prior bad acts. Assuming that defendant's argument was sufficient to raise plain error, there was strong, independent evidence of defendant's guilt.

### 7. Appeal and Error— preservation of issues—jury instructions—necessity for objection at trial

Defendant must present an issue to the trial court and obtain a ruling to preserve that issue for appellate review. The defendant here waived appellate review of jury instructions where he did not object but pointed out a concern, the judge reworded the instructions, and defendant did not then object.

Appeal by defendant from judgments entered 24 June 2004 by Judge Ola M. Lewis in Robeson County Superior Court. Heard in the Court of Appeals 8 June 2005.

*Attorney General Roy Cooper, by Assistant Attorney General M. Elizabeth Guzman, for the State.*

*Haral E. Carlin, for defendant-appellant.*

**STATE v. LOCKLEAR**

[172 N.C. App. 249 (2005)]

TYSON, Judge.

Jerry Locklear ("defendant") appeals from judgments entered after a jury found him to be guilty of: (1) two counts of second-degree rape; and (2) five counts of felony incest. We find no error.

## I. Background

### A. State's Evidence

V.L. is defendant's daughter. The State's evidence tended to show in April 1995, defendant came home drunk while V.L., fifteen years old, was home alone. Defendant began touching V.L. and she attempted to get away from him. When V.L. tried to telephone for help, defendant pulled the telephone wire from the wall. V.L. and defendant wrestled. Defendant eventually overpowered and engaged in sexual intercourse with her.

V.L. drove defendant's car to her mother's job site in tears. Her mother returned home and discovered the telephone wire had been torn from the wall. V.L.'s mother also observed the bedcovers were off the bed and defendant was lying across the bed drunk. The following day V.L.'s mother took her to the hospital. A rape kit indicated sexual activity but failed to detect the presence of semen. V.L. reported the rape to the Robeson County Department of Social Services ("DSS"), but recanted a short time later because defendant threatened to hurt her and her mother.

A second incident also occurred in 1995 when V.L. wrecked the car she was driving. V.L. was accompanied by defendant, her brother, and a cousin. V.L. was driving because defendant was too drunk to drive. V.L. and defendant hid from the police in the woods while her brother and cousin fled. While hiding, defendant and V.L. engaged in sexual intercourse. V.L. testified she believed this event occurred in Spring 1995 because it was warm outside.

V.L. testified that sexual intercourse with defendant became "an ongoing thing," occurring "about four and five times a month," although she had difficulty remembering specific dates. In 1997, V.L., then seventeen years old, engaged in sexual intercourse with defendant on the living room couch. V.L. subsequently became pregnant with her son, J.L., born 26 June 1998. V.L. identified defendant as the father of her son.

Four months after the birth of her son, V.L., then eighteen years old, went out on a date. Defendant insisted on "checking her"

when she returned home to see if she had engaged in sexual intercourse. Defendant subsequently engaged in sexual intercourse with V.L. who became pregnant and gave birth to K.L., a daughter, on 12 August 1999.

V.L. told hospital employees and DSS of defendant's actions and the assaults that had taken place over several years. The hospital and DSS helped V.L. enter a shelter. In November 2002, V.L. spoke to Detective Vincent Sinclair ("Detective Sinclair") of the Robeson County Sheriff's Office Juvenile Task Force. DSS had taken V.L.'s children from her home until she filed charges against defendant, who continued to visit her. V.L. recalled telling Detective Sinclair about the incident where she wrecked the car but could not remember telling him the dates of the other incidents. V.L. stated defendant started inappropriately touching her when she was four years old.

M.L., V.L.'s older sister, testified over defendant's objection that defendant had touched her private parts with his hands before she was old enough to start school. M.L. could not recall exactly what happened to her, but remembered the events. M.L. could not recall specific times, dates, places, or other precise information. In addition to M.L.'s testimony, V.L.'s mother testified defendant had beaten and shot at her, put knives to her throat, pulled her hair out by the roots, and had raped her.

Detective Sinclair interviewed V.L., her mother, and M.L. During trial, their statements were read to the jury over defendant's objection. Detective Sinclair also had LabCorp perform a DNA analysis to determine the paternity of V.L.'s children. Anthony Winston testified he analyzed the specimens and in his opinion, the tests showed a 99.99% probability defendant had fathered both of V.L.'s children.

After his arrest, defendant gave a statement to Detective Sinclair during which, at certain points, he admitted to having sex with V.L. after her children were born. At other times during his statement, defendant denied remembering placing his penis inside V.L.

### B. Defendant's Evidence

Defendant testified on his own behalf, denied any wrongdoing with his daughter, M.L., and denied any type of sex with V.L. Defendant denied some of the statements he made to Detective Sinclair. When asked if he ever engaged in sex in any way with V.L. at any time, defendant responded, "not that I can remember."

The jury found defendant guilty of two counts of second-degree rape and five counts of felony incest. Defense counsel did not object to the sentencing worksheet finding defendant a record level II for purposes of sentencing. The trial court sentenced defendant to seven consecutive sentences totaling a minimum of 275 months and a maximum of 348 months. Defendant appeals.

## II.  Issues

Defendant argues the trial court erred in: (1) not dismissing the charges of second-degree rape for insufficient evidence; (2) not dismissing the charges of incest for insufficient evidence; (3) allowing Detective Sinclair to read statements of V.L. and V.L.'s mother into evidence for the purposes of corroboration; (4) allowing M.L.'s testimony on defendant's prior bad acts; (5) allowing V.L.'s mother to testify to remote past acts; (6) giving a disjunctive jury instruction concerning second-degree rape and incest; (7) not requiring the State to meet its burden of proof of defendant's existing criminal conviction record in sentencing defendant.

## III.  Abandonment of Assignments of Error

Defendant voluntarily abandoned assignments of error numbers seven, nine, eleven, twelve, and thirteen by failing to argue them in his brief. N.C.R. App. P. 10 (2004). We decline to review these abandoned assignments of error and dismiss.

## IV.  Motion to Dismiss

Defendant argues the trial court erred in not dismissing the charges of second-degree rape and felony incest due to insufficient evidence. We disagree.

In ruling on a motion to dismiss, the trial court must consider the evidence in the light most favorable to and give the State every reasonable inference to be drawn from the facts and evidence presented. *State v. Lee*, 348 N.C. 474, 488, 501 S.E.2d 334, 343 (1998) (citations omitted). We uphold a trial court's ruling on a motion to dismiss if the State presents substantial evidence: "(1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455, *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000) (quoting *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980) (citations omitted)). "Substantial evidence is . . . relevant evidence which a

reasonable mind could accept as adequate to support a conclusion." *Lee*, 348 N.C. at 488, 501 S.E.2d at 343 (citing *State v. Vick*, 341 N.C. 569, 583-84, 461 S.E.2d 655, 663 (1995)). "[T]he evidence need only give rise to a reasonable inference of guilt for the case to be properly submitted to the jury." *State v. Barnett*, 141 N.C. App. 378, 383, 540 S.E.2d 423, 427 (2000), *disc. rev. denied and appeal dismissed*, 353 N.C. 527, 549 S.E.2d 552, *aff'd per curiam*, 354 N.C. 350, 554 S.E.2d 644 (2001).

## A.  Second-Degree Rape

[1] Defendant argues insufficient evidence was tendered to support the charges of second-degree rape.

To establish the crime of second-degree rape, the State must prove the defendant "engage[d] in vaginal intercourse with another person [b]y force and against the will of the other person." N.C. Gen. Stat. § 14-27.3 (2003); *see also State v. Hosey*, 79 N.C. App. 196, 199-200, 339 S.E.2d 414, 416, *cert. granted*, 316 N.C. 382, 342 S.E.2d 902, *modified by* 318 N.C. 330, 348 S.E.2d 805 (1986). We have held that

> [c]onstructive force in the form of fear, fright, or coercion [is sufficient] to establish the element of force in second-degree rape and may be demonstrated by proof of a defendant's acts which, in the totality of the circumstances, create the reasonable inference that the purpose of such acts was to compel the victim's submission to sexual intercourse.

*State v. Parks*, 96 N.C. App. 589, 593, 386 S.E.2d 748, 751 (1989) (citing *State v. Etheridge*, 319 N.C. 34, 352 S.E.2d 673 (1987)). Our Supreme Court held "illicit advances at an age when [a child] could not yet fully comprehend the implications of defendant's conduct[] . . . ." has "conditioned [the child] to succumb" to the illicit advances are sufficient to establish the element of force. *Etheridge*, 319 N.C. at 47, 352 S.E.2d at 681. The Court further held when the sexual activity between a parent and child "creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose[] . . . the child's knowledge of [her] father's power may alone induce fear sufficient to overcome [her] will to resist . . . ." *Id.* at 48, 352 S.E.2d at 681-82.

Here, V.L. alleged defendant engaged in vaginal intercourse with her on 26 September 1997 and 11 November 1998, both of which resulted in V.L. becoming pregnant. Forensic DNA testing showed a high probability that defendant is the father of V.L.'s children. V.L.

stated defendant started molesting her when she was four years old. V.L. testified she was "scared" and stated, "[defendant] threatened me before if I tell anybody he would beat me and try to kill me."

Taken in the light most favorable to the State, substantial evidence supports each element of the charges against defendant and tends to show defendant committed the offenses. The trial court did not err in denying defendant's motion to dismiss. This portion of defendant's assignment of error is overruled.

## B. Incest

**[2]** Defendant asserts the trial court erred in not dismissing the charges of incest due to insufficient evidence. Defendant argues the indictment dates and the dates of the alleged intercourse V.L. testified to are not the same.

In order to establish the crime of incest, the State must prove the defendant engaged in carnal intercourse with his parent or child or stepchild or legally adopted child. N.C. Gen. Stat. § 14-178 (2003). In *State v. Cameron,* our Court addressed the issue of inconsistent dates on an indictment for incest and those testified to at trial. 83 N.C. App. 69, 72, 349 S.E.2d 327, 329-30 (1986). The facts in *Cameron* showed discrepancies between the alleged occurrence date and the date the child testified that she was raped by her father. We held, "failure to state accurately the date or time an offense is alleged to have occurred does not invalidate a bill of indictment nor does it justify reversal of a conviction obtained thereon." *Id.* at 72, 349 S.E.2d at 329 (citing N.C. Gen. Stat. § 15-155). We noted this rule may not apply in cases where the defendant claimed an alibi defense. *Id.* at 72, 349 S.E.2d at 330 (citations omitted).

Here, V.L., her mother, and M.L. all testified defendant was V.L.'s father. V.L. stated defendant started molesting her when she was four years old. Hospital records were introduced into evidence showing the presence of bruising and other indications of intercourse during April 1995, one of the dates defendant was charged with incest.

Defendant further argues the dates contained in the indictment and those testified to at trial were inconsistent. Defendant did not argue an alibi for the alleged time of the encounters. Defendant's only asserted defense was that V.L. was the aggressor in all sexual activity between them. Defendant was placed on notice by the indictments of multiple allegations of sexual offense with his daughter and suffered

no prejudice as a result of her imperfect memory of specific dates. *Id.* at 73, 349 S.E.2d at 330. Any discrepancies were credibility issues for the jury to weigh in determining defendant's guilt.

Taken in the light most favorable to the State, substantial evidence supports the elements of felony incest and tends to show defendant committed the offenses. The trial court did not err in denying defendant's motion to dismiss. This assignment of error is overruled.

## V.　Hearsay

Defendant argues the trial court erred by allowing Detective Sinclair to read into evidence statements of V.L. and her mother for the purposes of corroboration. We disagree.

> Corroboration is the process of persuading the trier of the facts that a witness is credible. We have defined "corroborate" as "to strengthen; to add weight or credibility to a thing by *additional and confirming* acts or evidence." Prior consistent statements of a witness are admissible as corroborative evidence even when the witness has not been impeached. However, the prior statement must in fact corroborate the witness' testimony.

> In order to be corroborative and therefore properly admissible, the prior statement of the witness need not merely relate to specific facts brought out in the witness's testimony at trial, so long as the prior statement in fact tends to add weight or credibility to such testimony. *Our prior statements are disapproved to the extent that they indicate that additional or "new" information, contained in the witness's prior statement but not referred to in his trial testimony, may never be admitted as corroborative evidence.* However, the witness's prior statements as to facts not referred to in his trial testimony *and not tending to add weight or credibility* to it are not admissible as corroborative evidence. Additionally, the witness's prior contradictory statements may not be admitted under the guise of corroborating his testimony.

*State v. Ramey*, 318 N.C. 457, 468-69, 349 S.E.2d 566, 573-74 (1986) (internal citations and quotations omitted) (emphasis supplied).

## A.　V.L.'s Statements

[3] Defendant asserts V.L.'s statements to Detective Sinclair were inconsistent with her testimony at trial and should not have been allowed into evidence for corroboration. Defendant argues two spe-

STATE v. LOCKLEAR

[172 N.C. App. 249 (2005)]

cific instances: (1) V.L. told Detective Sinclair defendant had molested her since she was "seven" and later testified defendant's molestation began when she was "four;" and (2) V.L. inverted the order in her testimony of an alleged sexual encounter and a fight between her mother, defendant, and herself.

V.L.'s testimony clearly indicated a long term and continuing sexual abuse by defendant. Although V.L.'s statements included additional facts not referred to in her testimony, V.L.'s prior oral and written statements to Detective Sinclair tended to strengthen and add credibility to her trial testimony. Any inconsistencies were for the jury to consider and weigh. These statements were admissible as corroborative evidence. *See State v. Higginbottom*, 312 N.C. 760, 769, 324 S.E.2d 834, 840 (1985), *superseded by statute on other grounds by State v. Green*, 348 N.C. 588, 502 S.E.2d 819 (1998); *see also State v. Burns*, 307 N.C. 224, 231-32, 297 S.E.2d 384, 388 (1982).

"The jury could not be allowed to consider this evidence for any other purpose, however, and whether it in fact corroborated the victim's testimony was, of course, a jury question." *Ramey*, 318 N.C. at 470, 349 S.E.2d at 574. We find no error in the admission of Detective Sinclair's testimony regarding V.L.'s prior statements for corroborative purposes. This portion of defendant's assignment of error is overruled.

### B. V.L.'s Mother's Statements

[4] Defendant argues V.L.'s mother's statements made to Detective Sinclair contained different information from her testimony at trial. Defendant asserts these statements should not be allowed into evidence for corroboration purposes.

The only examples defendant asserts in his brief in support of not allowing V.L.'s mother's statement are: (1) the reversal of events by V.L.; (2) whether defendant was drunk and passed out when V.L. and her mother returned home to get some clothes; and (3) whether defendant woke up and a fight ensued when V.L. and her mother were trying to get some clothes.

V.L.'s and her mother's prior oral and written statements to Detective Sinclair tended to strengthen and add credibility to her trial testimony although they included additional facts not referred to in her testimony. They were admissible as corroborative evidence. *See Higginbottom*, 312 N.C. at 769, 324 S.E.2d at 840; *see also Burns*, 307 N.C. at 231-32, 297 S.E.2d at 388.

"The jury could not be allowed to consider this evidence for any other purpose, however, and whether it in fact corroborated the victim's testimony was, of course, a jury question." *Ramey*, 318 N.C. at 470, 349 S.E.2d at 574. We find no error in the admission of Detective Sinclair's testimony of V.L.'s mother's prior statements for corroborative purposes. This assignment of error is overruled.

## VI. Prior Bad Acts

**[5]** Defendant argues the trial court erred by allowing the testimony of M.L. regarding defendant's prior bad acts.

Our Supreme Court held in *State v. Shamsid-Deen* that testimony of an older sister about the father's sexual abuse of herself or siblings before they left home was permissible. 324 N.C. 437, 447-48, 379 S.E.2d 842, 848-49 (1989). The Court explained the law of evidence of other crimes and acts before and since its codification of Rule 404(b) of the North Carolina Rules of Evidence. *Id.* at 444, 379 S.E.2d at 847. Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2003). Evidence of prior acts of sexual misconduct may be admissible to show the defendant's intent, motive, or plan to commit the crime charged. *Shamsid-Deen*, 324 N.C. at 446, 379 S.E.2d at 848 (citing *State v. Boyd*, 321 N.C. 574, 577, 364 S.E.2d 118, 119 (1988)) (facts tended to show a pattern of sexual abuse by the defendant just before his daughters reached puberty, which continued into their early adulthood). Generally, if another victim testifies to the defendant's past acts and a substantial lapse in time has occurred, the testimony may be considered too remote in time and will not fall within the Rule 404(b) exception to be admitted. *State v. Jones*, 322 N.C. 585, 589-91, 369 S.E.2d 822, 824-25 (1988), *disc. rev. denied and appeal dismissed*, 328 N.C. 95, 402 S.E.2d 423 (1991). However, in *Shamsid-Deen*, the Court stated:

> the continuous execution of similar acts throughout a period of time has the opposite effect. When similar acts have been performed continuously over a period of years, the passage of

time serves to prove, rather than disprove, the existence of a plan. We thus hold that the prior acts were not too remote to be considered as evidence of defendant's common scheme to abuse the victim sexually.

324 N.C. at 445, 379 S.E.2d at 847 (citing *State v. Browder*, 252 N.C. 35, 38, 112 S.E.2d 728, 730-31 (1960)).

Here, V.L. stated defendant began fondling her at age four and such acts continued throughout her adolescence. V.L. described being beaten and threatened with beatings if she did not comply or keep quiet. M.L. testified defendant began touching her in her private parts before she started school. M.L. testified defendant grabbed her and beat her during these sexual assaults. M.L. testified she went to the hospital to be examined for sexual abuse around the age of eight or nine.

M.L.'s testimony concerning defendant's actions towards her when she was a child illustrate a continuing pattern of sexual abuse and an intent to commit incest with M.L. during the same approximate age defendant began to molest V.L. *Shamsid-Deen*, 342 N.C. at 446-47, 379 S.E.2d at 848. This assignment of error is overruled.

## VII. Past Acts

[6] Defendant argues the trial court committed plain error by allowing V.L.'s mother to testify regarding defendant's past acts which were irrelevant, prejudicial, and incompetent.

"Where, as here, a criminal defendant fails to object to the admission of certain evidence, the plain error analysis, rather than the *ex mero motu* or grossly improper analysis, is the applicable standard of review." *State v. Ridgeway*, 137 N.C. App. 144, 147, 526 S.E.2d 682, 685 (2000) (citing *State v. Gary*, 348 N.C. 510, 501 S.E.2d 57 (1998)). If "we are not persuaded that the jury probably would have reached a different result had the alleged error not occurred, we will not award defendant a new trial." *Id.* (citing *State v. Bronson*, 333 N.C. 67, 75, 423 S.E.2d 772, 777 (1992)).

In *State v. Odom*, our Supreme Court adopted the plain error rule exception to Rule 10 of the North Carolina Rules of Appellate Procedure. 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (applying to assignments of error regarding jury instructions). A defendant seeking plain error review must "specifically and distinctly" argue the alleged error committed by the trial court amounted to plain error.

*State v. Nobles*, 350 N.C. 483, 514-15, 515 S.E.2d 885, 904 (1999), *vacated and remanded*, 357 N.C. 433, 584 S.E.2d 765 (2003).

Here, defendant fails to argue plain error "specifically and distinctly" in his brief. *Id.* Defendant fails to cite any rules or authority to permit this Court to ascertain the grounds upon which defendant bases his plain error argument. Defendant broadly mentions Rules 401, 402, 403, and 404(b) of the North Carolina Rules of Evidence. Defendant does not apply these rules to any facts or evidence in his analysis to allow this Court to review his argument.

Presuming, without deciding, defendant's broad listing and quoting of evidence rules would be specific enough for this Court to review defendant's argument, we find there would be no probable impact on the jury's decision in light of other overwhelming evidence of defendant's guilt. *Ridgeway*, 137 N.C. App. at 147, 526 S.E.2d at 685.

The State tendered strong evidence of defendant's guilt independent of V.L.'s mother's testimony concerning when she left defendant and why she did not take her children with her. Defendant was the father of two children born of V.L. and admitted having sex with V.L. Furthermore, V.L. and M.L. both testified about defendant's violent nature and illicit sexual advances. This evidence tends to show and prove a longstanding and recurrent pattern of abuse of V.L. by defendant. We find no probability the jury would have reached a different conclusion had V.L.'s mother's testimony been excluded. *Id.* This assignment of error is dismissed.

## VIII. Jury Instructions

**[7]** Defendant argues the trial court erred in: (1) giving a disjunctive jury instructions concerning second-degree rape and felony incest; and (2) not requiring the State to meet its burden of proof of defendant's existing criminal conviction record used during sentencing. We disagree.

Defendant failed to object to the jury instructions but pointed out a concern to the trial court. The trial judge reworded the instructions and defendant failed to object. Defendant failed to object at all during the sentencing phase.

Rule 10(b)(1) of the North Carolina Rules of Appellate Procedure requires a defendant present an issue to the trial court and obtain a ruling in order to preserve that issue for appellate review. N.C.R.

App. P. 10(b)(1) (2004). Defendant failed to object to the jury instructions and the sentencing phase during trial and has waived appellate review. *State v. Scott*, 343 N.C. 313, 332, 471 S.E.2d 605, 616-17 (1996) (citing *State v. Moseley*, 338 N.C. 1, 36, 449 S.E.2d 412, 433-34 (1994), *cert. denied*, 514 U.S. 1091, 131 L. Ed. 2d 738 (1995); N.C.R. App. P. 10(c)(4)). These assignments of error are dismissed.

## IX. Conclusion

Taking the evidence in the light most favorable to the State and allowing it all reasonable inferences, substantial evidence tends to show all essential elements of second-degree rape and felony incest and defendant was the perpetrator of each offense charged. The trial court did not err in denying defendant's motion to dismiss these charges for insufficient evidence.

The trial court did not err in allowing Detective Sinclair to read into evidence statements of V.L. and her mother for corroboration or allowing the testimony of M.L. to show defendant's prior bad acts. M.L.'s testimony tends to show defendant's longstanding and consistent pattern of sexual abuse of his daughters.

Defendant waived appellate review of his remaining assignments of error after failing to either object or specifically allege plain error on appeal.

Defendant received a fair trial free from any errors he assigned and argued.

No error.

Judges McCULLOUGH and BRYANT concur.